| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b) |
| In re:<br>RITE AID CORPORATION, *et al.*,<br>　　　　　　　　　　Debtors.[1] |

Order Filed on November 16, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Chapter 11

Case No. 23-18993 (MBK)

(Jointly Administered)

# FINAL ORDER AUTHORIZING AND APPROVING THE
# SETTLEMENT BETWEEN THE DEBTORS AND MCKESSON CORPORATION

The relief set forth on the following pages, numbered three (4) through five (6) is **ORDERED**.

**DATED: November 16, 2023**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Aparna Yenamandra, P.C. (admitted *pro hac vice*)
Ross J. Fiedler (admitted *pro hac vice*)
Zachary R. Manning (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
esassower@kirkland.com
joshua.sussberg@kirkland.com
aparna.yenamandra@kirkland.com
ross.fiedler@kirkland.com
zach.manning@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Seth Van Aalten, Esq. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com
svanaalten@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

(Page | 4)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | FINAL ORDER AUTHORIZING AND APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND MCKESSON CORPORATION |

Upon the *Debtors' Motion for Entry of an Order Authorizing and Approving the Settlement Between the Debtors and McKesson Corporation* ("Motion"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the United States Trustee having filed a limited objection to the Motion [Dkt. 302]; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor; and for the reasons set forth on the record at the hearing conducted on October 26, 2023, **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on a final basis as set forth herein.

2. The Interim Post-Petition Supply Agreement attached hereto as Exhibit A is hereby approved on a final basis. The Debtors are authorized and directed to take all actions necessary to immediately continue and fully implement the Settlement in accordance with the terms, conditions, and agreements in the Settlement on an interim basis.

(Page | 5)
Debtors: RITE AID CORPORATION, *et al.*
Case No. 23-18993 (MBK)
Caption of Order: FINAL ORDER AUTHORIZING AND APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND MCKESSON CORPORATION

---

3. During the term of the Interim Post-Petition Supply Agreement, the Debtors and McKesson shall use best efforts to negotiate a mutually beneficial go-forward post-bankruptcy supply agreement with McKesson in consultation with the Ad Hoc Secured Noteholder Group (with periodic updates by the Debtors to the professionals for the official committees on the status of such negotiations, on a professionals' basis) and in accordance with the terms of the Restructuring Support Agreement.

4. Capitalized terms defined in footnote 9 of the Interim Post-Petition Supply Agreement shall have the meanings ascribed to such terms in the Interim DIP Order until such time that an order approving the DIP Facilities on a final basis is entered (such order, the "Final DIP Order"), at which time such defined terms shall have the meanings set forth in the Final DIP Order.

5. This order shall be binding on the Debtors, their estates, all creditors and parties-in-interest, and any trustee appointed in these cases.

6. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this order shall be effective and enforceable immediately upon entry hereof.

7. Notice of the Motion as provided therein shall be deemed good and sufficient notice and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

8. The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

(Page | 6)

| | |
|---|---|
| Debtors: | RITE AID CORPORATION, *et al*. |
| Case No. | 23-18993 (MBK) |
| Caption of Order: | FINAL ORDER AUTHORIZING AND APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND MCKESSON CORPORATION |

9. Upon entry of this order, the Debtors will file papers to dismiss the Adversary Proceeding as set forth in the Interim Post-Petition Supply Agreement. Until such time that this order is entered, the Adversary Proceeding shall be held in abeyance.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Settlement and this Interim Order.

**<u>Exhibit A</u>**

# McKesson Corporation--Rite Aid Corporation

Amended Interim Post-Petition Supply Agreement

November 15, 2023

This Amended Interim Post-Petition Supply Agreement sets forth certain trade terms applicable to the interim supply agreement (the "Amended Interim Supply Agreement") agreed to by Rite Aid Corporation (together with its affiliates, "RAC") and McKesson Corporation (together with its affiliates, "McKesson") (McKesson and RAC each a "Party" and collectively the "Parties"). All other terms of this Amended Interim Supply Agreement other than those specifically detailed herein shall be the same as in that certain Supply Agreement originally entered into and dated December 22, 2003 and restated in its entirety by the Seventh Amendment entered into and dated as of April 1, 2014 (and as the same has been previously amended, the "Prepetition Supply Agreement"), including, without limitation, section 7.7 thereof, between RAC and McKesson. Effective as of the date of the 9019 Order (as defined below), this Amended Interim Supply Agreement amends, restates, supersedes, and replaces in its entirety that certain Interim Post-Petition Supply Agreement, dated as of October 23, 2023, agreed to by the Parties (the "Interim Supply Agreement").[1]

| Topic | Terms |
|---|---|
| **Effectiveness** | All terms of this Amended Interim Supply Agreement (other than those set forth under the section below titled "*Superpriority Claims*") shall be effective as of October 15, 2023 (the "Petition Date"), the date the bankruptcy cases of RAC and certain of its affiliates (the "Debtors") proceeding under the caption *In re Rite Aid Corporation*, Case No. 23-18993 (MBK) (the "Chapter 11 Cases") were filed in the United States Bankruptcy Court for the District of New Jersey (the "Court").<br><br>Not later than the first day after the execution of this Amended Interim Supply Agreement, the Debtors shall file an amended proposed order in connection with the 9019 Motion[2] and take any other action that is necessary or advisable to seek approval of this Amended Interim Supply Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. The agreements set forth under the |

---

[1] Pending the entry of the 9019 Order (as defined below), the Interim Supply Agreement shall remain in full force and effect pursuant to the *Interim Order Authorizing and Approving the Settlement Between the Debtors and McKesson Corporation* entered in the Chapter 11 Cases at Docket No. 373.

[2] As used herein, "9019 Motion" means the *Debtors' Motion for Entry of an Order Authorizing and Approving the Settlement Between the Debtors and McKesson Corporation* filed in the Chapter 11 Cases at Docket No. 220.

1

| Topic | Terms |
|---|---|
|  | section titled "*Superpriority Claims*" of this Amended Interim Supply Agreement shall be effective automatically upon entry of a final order of such approval by the Court (the "9019 Order"). Upon entry of the 9019 Order, the Debtors will promptly file a notice dismissing the Complaint[3] and TRO Motion[4] with prejudice, except as expressly set forth in the "*Reservation of Rights*" section of this Amended Interim Supply Agreement. |
| **Payment Terms** | Invoices for deliveries of products to RAC (including to any retail or specialty pharmacy owned and operated by RAC or its affiliates) (collectively, "Pharmacies") shall be due and paid on or before the seventh (7th) day after the date of delivery of such invoice (the "Invoice Date"), except that, in the case of orders to warehouses, the Invoice Date is the date that the order departs the RDC, unless an alternate delivery time has been requested by RAC, in which event, such Invoice Date shall be the date the product is ready for shipment from the RDC;[5] *provided*, *however*, that if a payment is due on a Saturday, then the payment shall instead be due on the preceding Business Day.[6] If a payment is due on a day specified as a Sunday or a Holiday, then payment shall instead be due on the following Business Day. Each date such a payment is required to be made in relation to an invoice is referred to herein as a "Payment Due Date". |
| **Applicable Cure Period** | RAC shall timely pay all invoices when due for goods delivered on and after the Petition Date, but in the case that |

---

[3] As used herein, "Complaint" means the *Verified Adversary Complaint* filed in the adversary proceeding captioned *Rite Aid Corp. v. McKesson Corp.*, Adv. Pro. No. 23-01294 (MBK) in connection with the Chapter 11 Cases (the "Adversary Proceeding") at Docket No. 1.

[4] As used herein, "TRO Motion" means the *Application in Support of the Debtors' Request for a Temporary Restraining Order and Preliminary Injunction* filed in the Adversary Proceeding at Docket No. 2.

[5] As used herein, "RDC" means a McKesson redistribution center.

[6] As used herein:

"Business Day" means any day that is not a Saturday, Sunday, or Holiday.

"Holiday" means a day on which banks are legally authorized to close in the State of New York.

2

| Topic | Terms |
|---|---|
| | RAC (i) fails to pay at least 95% of the full amount owed to McKesson by the applicable Payment Due Date, or (ii) has three (3) or more unresolved, unpaid Payment Shortfalls (as defined below) outstanding concurrently (each, an "Unsatisfactory Payment Performance"), then RAC may elect to cure such Unsatisfactory Payment Performance within the following periods (each a, "Cure Period"): |

| Type of Unsatisfactory Payment Performance | Applicable Cure Period |
|---|---|
| An invoice is partially paid (95% or less) <br><br> or <br><br> Three (3) or more concurrent unresolved, unpaid Payment Shortfalls | The second (2nd) Business Day after McKesson delivers written notice, including by email, of such Unsatisfactory Payment Performance (an "Unsatisfactory Payment Notice", which shall set forth in reasonable detail the grounds or basis for such determination) to RAC.[7] |
| No part of an invoice is paid | The first (1st) Business Day after McKesson delivers an Unsatisfactory Payment Notice to RAC |

Any payment of less than 100% but greater than 95% of the full amount owed to McKesson by the applicable Payment Due Date (each, a "Payment Shortfall") will be solely due to error (which RAC will resolve immediately upon discovery) or a dispute over an invoice (which RAC and McKesson will work in good faith to resolve promptly and in accordance with historical practices); *provided* that for these purposes notices via email from McKesson of a Payment Shortfall will suffice. RAC shall pay any

---

[7] Email notice shall also include counsel to RAC: aparna.yenamandra@kirkland.com and joshua.sussberg@kirkland.com

3

| Topic | Terms |
|---|---|
|  | Payment Shortfall no later than one (1) Business Day after resolution of any such error or dispute, including in the event of any partial resolution of a dispute; *provided, however*, that the Cure Period set forth above will apply in the event that three (3) or more Payment Shortfalls are outstanding concurrently.<br><br>McKesson acknowledges that RAC shall contemporaneously send to the ABL Agents,[8] the advisors to the Ad Hoc Secured Noteholder Group,[9] the UCC[10] and the TCC[11] any notices that McKesson sends to RAC pursuant to this "*Applicable Cure Period*" section.<br><br>In the event of a dispute regarding an Unsatisfactory Payment Performance, an Unsatisfactory Payment Notice, a Payment Shortfall, a Cure Period, or any other alleged breach of this Amended Interim Supply Agreement, the Parties agree that either Party is entitled to seek a hearing before the Court on an expedited basis to resolve such dispute. |
| **Change in Payment Terms** | In addition to any other rights and remedies under the Amended Interim Supply Agreement, upon the expiration of any Cure Period following any Unsatisfactory Payment Performance, without cure from RAC, and without any further notice or consent of RAC or any other person, McKesson may elect to (i) suspend or discontinue the shipment of any additional orders to RAC or any of its Pharmacies and/or (ii) change any of the payment terms of this Amended Interim Supply Agreement including, without limitation, by imposing the requirement for all future invoices of cash payment upon delivery, subject to |

---

[8] As used herein, "ABL Agents" shall have the meaning given to such term in the *Declaration of Jeffrey S. Stein in Support of Debtors' Chapter 11 Petitions and First Day Motions* filed in the Chapter 11 Cases at Docket No. 20 (the "Stein Declaration").

[9] As used herein "Ad Hoc Secured Noteholder Group" shall have the meaning given to such term in the Stein Declaration.

[10] As used herein, "UCC" means the Official Committee of Unsecured Creditors appointed by the Untied States Trustee pursuant to Section 1102(a)(1) of the Bankruptcy Code in the Chapter 11 Cases.

[11] As used herein, "TCC" means the Official Committee of Tort Claimants appointed by the Untied States Trustee pursuant to Section 1102(a)(1) of the Bankruptcy Code in the Chapter 11 Cases.

| Topic | Terms |
|---|---|
|  | payment in full of all outstanding invoices for goods delivered on and after the Petition Date. |
| **Superpriority Claims** | All amounts owed by RAC to McKesson on account of goods shipped on and after the Petition Date shall be granted a superpriority administrative expense claim against each of the Debtors' estates pursuant to Section 364(c)(1) of the Bankruptcy Code[12] (the "Superpriority Claims"), which for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code shall be considered an administrative expense allowed in full under section 503(b) of the Bankruptcy Code.  McKesson's Superpriority Claims shall be senior to all administrative claims in the Bankruptcy Cases and shall be immediately junior to (i) the DIP Superpriority Claims, (ii) any Adequate Protection Superpriority Claims, and (iii) for the avoidance of doubt, the Carve Out.[13] |
| **Additional Amended Interim Supply Agreement Reporting Rights** | On and after the date of this Amended Interim Supply Agreement, McKesson shall receive copies of all certificates, notices or other reporting (financial or otherwise) as and when provided to the DIP Lenders, the ABL Lenders, the Ad Hoc Secured Noteholder Group, to any Prepetition Secured Parties, to the holders of the holders of the Unsecured Notes or any other post-petition secured parties from time to time, whether provided pursuant to the Prepetition Debt Documents, DIP Documents, the Restructuring Support Agreement[14] or in other agreements with holders of material indebtedness, as may be agreed from time to time, (including, without |

---

[12] As used herein, "Bankruptcy Code" means title 11 of the United States Code, as amended.

[13] As used herein, the terms "DIP Superpriority Claims", "Adequate Protection Superpriority Claims", and "Carve Out" shall have the meanings given to such terms in the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*, entered in the Chapter 11 Cases at Docket No. 120 (the "Interim DIP Order").

[14] As used herein, "ABL Lenders", "Ad Hoc Secured Noteholder Group", "Prepetition Secured Parties", "Unsecured Notes", "Prepetition Debt Documents", "DIP Documents", and "Restructuring Support Agreement" shall have the meanings given to such terms in the Stein Declaration.

| Topic | Terms |
|---|---|
|  | limitation, any compliance certificates, borrowing base certificates, periodic reports and notices of any default or event of default). |
| **Case Direction Meetings** | The Debtors will use best efforts to arrange regular case-direction meetings among the Debtors, McKesson, the Ad Hoc Secured Noteholder Group, the DIP ABL and Term Loan Agent and the ABL Agent, the UCC, the TCC, and any other creditor groups that form after the date of this Amended Interim Supply Agreement and entry of the 9019 Order (or, in each case, professionals thereto). |
| **Reservation of Rights** | RAC and McKesson expressly reserve all rights with respect to the purported termination of the Prepetition Supply Agreement on or before the Petition Date, and any future motion to reject or assume the Prepetition Supply Agreement under Section 365 of the Bankruptcy Code. In addition, for the avoidance of doubt, RAC and McKesson expressly reserve all rights and remedies with respect to the enforcement of this Amended Interim Supply Agreement. |
| **Acknowledgement of Prepetition Claim** | By RAC's signature hereto, the Debtors hereby acknowledge McKesson's prepetition claim for goods delivered prior to the Petition Date and that such claim constitutes an administrative claim under Section 503(b)(9) of the Bankruptcy Code to the extent such goods were delivered within the 20-day period prior to the Petition Date.<br><br>McKesson and the Debtors agree that the pricing set forth in the invoices is determinative of the value of the products received by RAC. The 503(b)(9) claim amount may be adjusted from time to time to incorporate updated delivery information. |
| **Term of Amended Interim Supply Agreement** | Unless earlier terminated pursuant to the terms set forth herein or as otherwise agreed by the Parties, the terms of this Amended Interim Supply Agreement set forth herein shall remain in force until the earliest of (i) the closing date |

| Topic | Terms |
|---|---|
|  | of a sale of substantially all of the Debtors' pharmacy operations, (ii) the liquidation of substantially all of the Debtors' pharmacy assets, and (iii) the effective date of a chapter 11 plan in the Chapter 11 Cases. |
| **Good Faith Cooperation** | During the term of this Amended Interim Supply Agreement, RAC and McKesson shall use best efforts to negotiate a mutually beneficial go-forward post-bankruptcy supply agreement with McKesson.<br><br>With respect to all product orders, returns, and rebates, RAC and McKesson will cooperate in good faith to identify the Invoice Date and delivery date of the products in order to properly classify and allocate obligations relating to the period prior to the Petition Date versus obligations arising under the Amended Interim Supply Agreement. |

[*Signature Page Follows*]